## 65724. GENERAL AMERICAN LIFE INSURANCE COMPANY v. SAMPLES.

CARLEY, Judge.

In 1974, appellee's employer, McLarty Industries, Inc. (McLarty), obtained group insurance from appellant covering McLarty employees. Appellee applied for dependent health insurance coverage on her husband and thereafter, from 1974 to November of 1977, a premium was regularly deducted from her pay check. In March of 1977, appellee's husband became ill and medical bills were incurred. Appellee submitted a claim to appellant, but was not paid. Appellant asserted that the group policy had been terminated as of December 31, 1976, for nonpayment of premiums and that, accordingly, the policy was not in effect at the time the medical bills had been incurred. Appellee filed suit against appellant to recover $15,586.35, the total amount of her husband's medical bills. The jury returned a verdict in this amount for appellee. Appellant appeals from the denial of its motions for judgment n.o.v. and new trial.

1. Appellant enumerates as error the denial of its motions for directed verdict and judgment n.o.v. Appellant's argument is premised upon a provision of the policy which provided for a thirty-one day grace period for the payment of premiums and for the automatic termination and voiding of the policy if premiums were not paid during this grace period. Since premiums were due on the policy the first day of each month, appellant contends that the policy was automatically terminated and became void when the December 1976 premium was not paid by the thirty-first of that month.

The uncontroverted evidence in the instant case demonstrates the following: For fourteen consecutive months, appellant received and accepted late and irregular monthly premiums from McLarty. This history of appellant's failure to adhere strictly to the premium payment schedule in the original contract is perhaps best illustrated by an exchange of correspondence between appellant and McLarty in 1976. On June 15, 1976, appellant sent McLarty written notice of a "temporary suspension of payment claims" due to nonpayment of premiums. McLarty responded to this suspension notice by reminding appellant of their "agreement" of many years regarding payment of premiums. Appellant then wrote back to McLarty, stating that it was aware of their "agreement," that its suspension notice had been issued by a new employee who had not checked with her supervisor before sending it and that it apologized to appellee for any problem that the suspension notice might have caused.

The evidence thus clearly authorized a finding that a pattern or

course of conduct had been established which departed from the express contractual provisions for the payment of premiums on the policy. The applicable statute in effect at all relevant times provided: "[W]here parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. Until such notice, the departure is a quasi new agreement." Former Code Ann. § 20-116. There is no evidence that appellant ever gave McLarty notice of its intent to return to and rely upon the exact terms of the policy regarding the payment of premiums. Accordingly, appellant cannot rely upon McLarty's failure to make payment of the December 1976 premiums by the thirty-first of that month as the basis for asserting an automatic termination of the policy as a matter of law. See *Carolina Life Ins. Co. v. Moultrie,* 40 Ga. App. 15 (148 SE 628) (1929). Compare *Robertson v. Southland Life Ins. Co.,* 130 Ga. App. 807 (204 SE2d 505) (1974). The trial court did not err in denying appellant's motions for directed verdict and judgment n.o.v. based upon the automatic termination of the policy as of December 31, 1976.

2. From the holding in Division 1, it follows that, contrary to appellant's contention on appeal, the trial court did not err in giving an instruction to the jury on the notice requirements of OCGA § 33-24-44 (Code Ann. § 56-2430) for cancellation of a policy of insurance. As we held in Division 1, appellant's history of accepting late payment premiums, coupled with its failure to give notice of its intent to insist upon timely payment under the original contractual provisions, precluded establishment, as a matter of law, of appellant's "automatic termination" defense to appellee's action. If there was no "automatic termination" of the policy as the result of *McLarty's* history of late payment, the jury was authorized to consider whether or not *appellant* had validly cancelled the policy at any time and whether or not for this reason the policy was in effect at the time the medical bills were incurred by appellee's husband. "Notice to the insured in the event of the insurer's unilateral cancellation is not only a statutory duty, but also a practical necessity to inform the insured that he is uninsured." *Lumbermens Mut. Cas. Co. v. Haynes,* 163 Ga. App. 288, 289 (293 SE2d 744) (1982). The trial court did not err in instructing the jury regarding appellant's duty to give notice of cancellation. Compare *Robertson v. Southland Life Ins. Co.,* supra; *Lumbermens Mut. Cas. Co. v. Haynes,* supra.

Appellant further contends that if — as we have now held — a charge was authorized on an insurer's duty to give notice of cancellation of a policy, the charge on that issue in the instant case

was erroneous. The contention in this regard is that the charge concerning notice of cancellation embodied principles of Georgia law, whereas the actual policy provided that it should be construed pursuant to Alabama law. Appellant, however, failed to prove Alabama law as required by OCGA § 24-7-24 (Code Ann. § 38-706) and, accordingly, the law of Georgia was correctly applied. *Crisp v. McGill,* 229 Ga. 389 (1) (191 SE2d 836) (1982); *Borg-Warner Health Products v. May,* 154 Ga. App. 482 (1) (268 SE2d 770) (1980). The charge as given by the trial court was a correct and complete statement of the applicable Georgia law.

3. Appellant enumerates as error the giving of a charge on general principles of agency. It is contended that this charge was error insofar as it might have led the jury to believe that an employee of McLarty, whose duties included explaining the group insurance to other McLarty employees and assisting them with insurance claims, was appellant's agent. See *Blaylock v. Prudential Ins. Co.,* 84 Ga. App. 641, 644 (67 SE2d 173) (1951).

Our review of the contested charge demonstrates that it was a correct statement of general and abstract principles of agency law and in no way specifically charged or intimated that any McLarty employee was an agent for appellant. A correct statement of general principles of law, "applied alike to both parties, and it not appearing that it was probably harmful to the defendant, it [is] not cause for a new trial." *Dolvin v. American Harrow Co.,* 131 Ga. 300, 310 (10) (62 SE 198) (1908). Appellant has shown no harm resulting from the charge. "Courts . . . are not authorized to reverse on error alone, no matter how flagrant it may be. Error, to be reversible, must be harmful to the complaining party." *Gulick v. Mulcahy,* 95 Ga. App. 158, 160 (97 SE2d 362) (1957). Thus, even assuming that the charge was not applicable to any issue in the instant case and was erroneously given, it was not harmful and reversible error as to appellant.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

Decided July 8, 1983 —
Rehearing denied July 28, 1983 —

*Theodore G. Frankel,* for appellant.
*Michael R. Casper, Garland T. Byrd,* for appellee.