### A91A0423. TRAVELERS INSURANCE COMPANY v. ADKINS et al.
#### (407 SE2d 775)

SOGNIER, Chief Judge.

We granted the application for discretionary review filed by Travelers Insurance Company (TIC) from an affirmance by operation of law under OCGA § 34-9-105 (b)[1] from the Superior Court of Fulton County of an award entered by the State Board of Workers' Compensation. TIC's application was filed within 30 days from the date on which the Board's award was affirmed by operation of law and thus was timely under OCGA § 34-9-105 (d). Compare *Synthetic Indus. v. Camp*, 196 Ga. App. 637 (396 SE2d 518) (1990).

Appellee Dewey Adkins sustained a work related injury on July 15, 1988. Appellant denied Adkins' claim on the basis that it had cancelled the workers' compensation policy issued to his employer, appellee Labor Services, Inc. (LSI), effective May 1, 1988. The administrative law judge ruled in favor of appellant. Upon de novo review by the Board, however, the ALJ's award was reversed, and by order dated April 27, 1990, appellant was required to provide coverage for the injury. Appellant filed an appeal to the superior court from this order. LSI moved the Board to correct a typographical error, which the Board did on May 16, 1990 in an order otherwise expressly adhering to its April 27 order.

1. We reject appellees' argument that appellant seeks to have this court review directly an award of the Board. The notice of appeal clearly states that the appeal is from the automatic affirmance from the superior court of the Board's order, and appellant's enumeration is sufficient to point out the error complained of. See generally *Childers v. Tauber*, 160 Ga. App. 713, 714 (1) (288 SE2d 5) (1981).

2. We do not agree with appellees that our review of the affirmance of the Board's order is somehow limited to a consideration of the propriety of the automatic affirmance thereof. Nothing in OCGA § 34-9-105 restricts this court's review to that matter. The cases cited by appellees do not stand for the proposition that the appellate courts are restricted to considering the propriety of the automatic affirm-

---

[1] We note that the Supreme Court has granted the petition for certiorari in *Facility Constructors v. Slauson*, S91C0909, April 12, 1991 (discretionary appeal denied February 26, 1991 by unpublished order) to consider whether the automatic affirmance provision of OCGA § 34-9-105 (b) satisfies the requirements of due process.

ance. This court did not reach the merits of the appeal in *Synthetic Indus.*, supra, because appellant therein had untimely appealed from the automatic affirmance, and it is hardly surprising that the merits of the Board's awards were not addressed in *Felton Pearson Co. v. Nelson*, 260 Ga. 513 (397 SE2d 431) (1990) (see *Nelson v. Felton Pearson Co.*, 195 Ga. App. 92 (392 SE2d 274) (1990)) and *AT&T Technologies v. Barrett*, 195 Ga. App. 675 (395 SE2d 22) (1990), since in both cases the procedural question whether the awards were affirmed by operation of law was the sole or dispositive issue on appeal. Rather than supporting appellees' position, case law supports the principle that this court will address the merits of an appeal from an automatic affirmance in a workers' compensation case. See *Columbus Intermediate Care Home v. Johnston*, 196 Ga. App. 516 (396 SE2d 268) (1990) (merits addressed without discussion of issue raised here). In reviewing a timely appeal from an affirmance of a workers' compensation award, we see no rational basis to distinguish between an affirmance by written order of a superior court and one by operation of law. Thus, we will apply the same principles of review to an affirmance of the Board's award by operation of law that we would apply had such an affirmance been by order of a superior court.

3. Appellees contend that there was no appeal in the superior court upon which the automatic affirmance provision in OCGA § 34-9-105 (b) could work because appellant's notice of appeal to the superior court improperly designated the Board's April 27, 1990 award, and no appeal was taken from the Board's May 16, 1990 amended award, in which the Board corrected a typographical error in the April 27 order, pursuant to LSI's motion. OCGA § 34-9-103 (b) provides that "within the time limit provided . . . for appeal to a superior court, . . . notwithstanding the filing of an application for review or appeal, the board . . . issuing an award shall have authority to reconsider, amend, or revise the award to correct apparent errors and omissions. Should an amended or revised award be issued, the time period for filing an application for review of the amended or revised award . . . or for filing appeal to a superior court under Code Section 34-9-105 shall commence upon the date of issuance of the amended or revised award."

"[T]he proper statutory construction of OCGA § 34-9-103 (b) [is that w]ithin the [20] days subsequent to the date that [the Board] issues an award, [it] has 'authority to reconsider, amend, or revise' that award for the limited purpose of correcting 'apparent errors and omissions.' This authority exists notwithstanding the fact that . . . an appeal to a superior court may already have been filed as to the original award during the same [20]-day period. This authority may be exercised by the [Board] on [its] own motion or at the 'suggestion' of one of the parties. In the exercise of this authority, should the

[Board] issue an amended or revised award, a new [20]-day time period for applying for . . . an appeal to a superior court *as to that amended or revised award* will commence on the date of its issuance. . . . In short, OCGA § 34-9-103 (b) grants to both the ALJ and the Full Board a limited [20]-day 'authority' over workers' compensation awards, which 'authority' is in the nature of a limited 'continuing jurisdiction.' " (Emphasis supplied.) *Aetna Cas. &c. Co. v. Barden*, 179 Ga. App. 442, 443 (346 SE2d 588) (1986).

While there may be situations in which a party appealing from an award will necessarily have to refile its notice of appeal due to the substantive change brought about in an amended or revised award, such is not the case here, where the May 16 amended award merely corrected one obvious typographical error and otherwise expressly adhered to the April 27 award. Thus, although appellees' argument could be applicable in a different factual context, it lacks any merit in the case sub judice.

4. We now address the merits of this appeal. Appellant contends affirmance of the Board's award is error both as a matter of fact and as a matter of law. The record establishes that appellant issued three successive workers' compensation policies to appellee LSI. The first policy covered the period from December 1986 to December 1987. A second policy operated from the end of the first policy until the third policy became effective for coverage from January 1, 1988 to January 1, 1989. Appellant cancelled the first policy on three separate occasions (the cancellations to have taken effect in March, July, and November 1987) for non-payment of premiums and reinstated that policy each time upon LSI's payment of the premiums. The record supports the finding by the ALJ and the Board that in March 1988, appellant informed LSI it was cancelling the third policy effective May 1, 1988 due to LSI's failure to pay over $17,000 appellant claimed was due as premiums on the first policy. LSI was also informed it owed $90 on the third policy; it paid that amount before May 1st. An audit conducted in April revealed that LSI actually owed only $6,071 on the first policy. Appellant received LSI's payment of that sum on May 31, 1988. Three days later, on June 3, 1988, appellant sent LSI a premium notice of $3,700 on the third policy. The notice provided under "coverage description" that it was the "monthly audit 4-5/88." LSI paid the premium on July 2, 1988; appellant negotiated the check on July 8, 1988; Adkins' accident occurred July 15, 1988.

The Board found that appellant's course of dealings with LSI on the first policy (i.e., cancelling the policy for non-payment of premiums then reinstating when the premiums were paid), coupled with the June 3, 1988 premium notice appellant sent LSI on the third policy after accepting LSI's final payment of the premiums due on the

first policy (the non-payment of which being the stated cause for cancelling the third policy), led LSI to believe that late payments of premiums would be honored and would effect a reinstatement of its current policy. Thus, applying the rationale in *Continental Cas. Co. v. Union Camp Corp.*, 230 Ga. 8 (1) (195 SE2d 417) (1973), the Board held that coverage was in force on the date in question. The Board then determined that due to the cancellation-reinstatement pattern of behavior between the parties, LSI was entitled to reasonable notice from appellant that appellant intended to rely on the exact terms of the agreement, citing *General American Life Ins. Co. v. Samples*, 167 Ga. App. 622 (307 SE2d 51) (1983). Because appellant did not so notify LSI, the Board refused to allow appellant to vary its pattern of behavior after the fact.

(a) Appellant first contends that because it complied with OCGA § 33-24-44 (b) regarding written notice of cancellation to the insured and State Board of Workers' Compensation Rule 126 regarding documentation of the cancellation with the National Council on Compensation Insurance (NCCI), the Board erred by finding it responsible to provide insurance coverage to LSI on the date of Adkins' injury. We do not agree with appellant that the law of mutual departure, OCGA § 13-4-4, as applied to insurance policies in *Continental Cas. Co.*, supra, is inapplicable in the context of workers' compensation insurance. As appellant points out, workers' compensation insurance is but one form of casualty insurance. OCGA § 33-7-3 (2). While Board rules requiring documentation of certain matters with the NCCI do require additional action on the part of a workers' compensation insurance carrier, we do not find, nor has appellant cited, any reason why Board Rule 126 should distinguish workers' compensation insurance law from principles applicable to insurance law in general. Therefore, contrary to appellant's argument, we do not agree that cancellation in compliance with OCGA § 33-24-44 (b) and Board Rule 126, regardless of other circumstances surrounding the cancellation, automatically entitles a workers' compensation insurer to complete relief against a claim that the cancellation was not effective or applicable.

(b) Appellant next argues that the pattern of behavior displayed between the parties as to the first policy cannot be applied to action taken on the third policy because there is no legal nexus between the two policies. We do not agree. The record here reveals that the third policy was a renewal of the second policy, which was but a rewriting or renewal of the first policy. There is thus no difference between the case sub judice and *Continental Cas. Co.*, supra, which likewise involved three successive policies issued in renewal. Id. at 9. Furthermore, while appellant correctly notes that the third policy contained a provision authorizing it to cancel that policy for any reason, the fact that appellant had an "unfettered right to cancel" does not affect the

uncontroverted fact that the third policy was cancelled for nonpayment of a premium due on the first policy, thereby strengthening the evidence that LSI believed the pattern of behavior followed by the parties in regard to the first policy would likewise apply to the renewed policy.

(c) Appellant argues that its June 3rd premium notice to LSI did not constitute an initiation of contact with LSI regarding reinstatement but was merely a demand for payment due on coverage provided before the cancellation date. The Board, in considering this argument when raised before it by appellant, noted that appellant "never communicated to [LSI] that the premium payment in question would provide coverage only until May 1, 1988. Further, the evidence does not indicate that the June[ 3, 1988] premium notice was anything other than an offer to reinstate the 1988 policy." In view of the noncommittal language used in the premium notice, we cannot agree with appellant that as a matter of law or fact, the Board incorrectly interpreted that document in its award. Accordingly, we find no error.

(d) Appellant contends that the Board erred by finding that there had been a mutual departure by the parties from the terms of the policy provisions so as to require appellant to give reasonable notice of an intent to require strict compliance because the Board's finding was based on only the three prior instances where the cancellation/reinstatement behavior had occurred. "For a departure from the terms of a contract to be sufficient to require notice by one of the parties of his or her intention to insist upon strict compliance with the contract, the departure must be mutual and intended, such that the parties have essentially a new agreement concerning the requirements of the original contract. [Cits.]" *Duncan v. Lagunas*, 253 Ga. 61, 62 (1) (316 SE2d 747) (1984). However, while recognizing this well established principle behind the application of the law of mutual departure, OCGA § 13-4-4, the Supreme Court in *Continental Cas. Co.*, supra, went on to note that "yet, whether there has been such a mutual and intended departure so as to make practically a new agreement is generally a question for a jury to determine. [Cit.]" Id. at 11. In this case, that determination was made by the Board. "[T]he board's award, when supported by any evidence, is conclusive and binding. [Cits.]" *Mansfield Enterprises v. Warren*, 154 Ga. App. 863 (270 SE2d 72) (1980). Since there is some evidence that in handling disputes over the audited amounts of premiums due, appellant typically cancelled the policy but reinstated it once an agreement on the premium was reached and the money paid, " 'even though the evidence is not altogether complete and satisfactory,' [cit.]" *Jackson v. Armstrong*, 149 Ga. App. 617 (257 SE2d 46) (1979), the Board's award should and will be affirmed. Id.

5. Appellee LSI's motion for imposition of sanctions for frivolous

appeal is denied.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JUNE 20, 1991 —
RECONSIDERATION DENIED JULY 2, 1991 — 

*Irwin, Bladen, Baker & Russell, B. A. Bladen, Thurbert E. Baker,* for appellant.

*Chilivis & Grindler, Nicholas P. Chilivis, Daniel P. Griffin, E. Neal Little, Jr.,* for appellees.